# ED THOMPSON V. THE STATE.

No. 20624. Delivered January 10, 1940.
Rehearing Denied February 21, 1940.

The opinion states the case.

*Philip S. Kouri,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault with intent to rape upon Vesta Welborn, and by the jury given two years in the penitentiary.

The prosecutrix, a girl eighteen years of age, lived in the country near Electra. She was barely acquainted with appellant, a man thirty-one years of age. On the occasion herein complained of she was in company with some of her girl friends at the Petty Drug Store, and in the afternoon prosecutrix, the appellant, Mr. Nash and a girl friend went to the picture show, the appellant and prosecutrix sitting together. After the picture show these parties returned to the drug store, and finally agreed to go that night to the Red Roof dance hall and attend a dance there. Later on they again met at the drug store, and finally left for the dance in an automobile owned and driven by Mr. M. D. Walker, with whom prosecutrix had been keeping company to some extent. Among others, appellant went along. He was a married man, although separated from his wife at such time; but prosecutrix claimed not to have known that he was married. Upon reaching the Red Roof the party obtained two booths, and immediately began the drinking of mixed drinks, using gin, whisky and alcohol. The prosecutrix claimed to have drunk only one drink, a Manhattan cocktail, although her companions claimed she drank more than that amount, and that she was intoxicated; that she suffered from what they termed a "crying drunk." There was dancing on the part of all these parties, it being claimed that prosecutrix and appellant fell down on the dance floor, and that possibly prosecutrix fell down on the steps of the hall while leaving. They again entered the car of Mr. Walker, a coupe, and took the other girls home, leaving Mr. Walker, appellant and the prosecutrix in the car. Again about twelve or one o'clock they came to the drug store, which had a liquor package store in conjunction therewith, and drank a

soft drink, and then took one of the clerks in the store to his home. They then approached Mr. Walker's home, and had a conversation relative to who should take prosecutrix to her home some distance in the country. It was finally agreed that appellant should take her home. After they had driven about a mile and a half out of town towards her home, appellant stopped the car and grabbed prosecutrix and told her that he was going to "get into her britches." At this time she began to fight him and scream, and it is claimed by her that appellant scratched her and bit her and threatened her with a knife; that appellant hit her and finally knocked her out of the car, and she ran up the road screaming for help. That appellant chased her and caught her, and finally got her down in a ditch by the side of the road, and pulled her dress up and tried to take off her step-ins but was not able to do so. While she was fighting appellant down in the ditch a car came up and stopped by the Walker car, and she told appellant that was her father's car, and she ran to her father and began to tell him of the occurrence. The father produced a shot gun from the back of his car and proceeded towards the ditch. When near the ditch they saw appellant, who got up off the ground and started to run, and after calling to appellant to stop the father fired twice, appellant falling at the second shot. The father then disabled the Walker car and went back into town and reported to the officers who, upon returning to the scene, found that appellant had gone, but left the car. It also appears that appellant suffered with many No. 4 shot wounds. Appellant's contention was that he had merely kissed and hugged the prosecutrix, and that she was "crying drunk" and that the different bruises on her body were caused by her falling and striking herself on different objects. Much of this testimony was controverted, but in the main we have outlined that on which the jury evidently relied in finding their verdict.

Appellant's bill of exceptions No. 2 is without merit, and is overruled. The requested charge which is the basis of this bill was given by the court in a more succinct manner than was requested by the charge incorporated in this bill.

We also find bill of exceptions No. 3 in the identical situation that bill No. 2 is in, and we observe the same ruling.

Bill of exceptions No. 4 complains of the trial court's refusal to withdraw from the jury certain testimony showing that the father of prosecutrix shot the appellant with a shot gun. The trial court refused to withdraw such testimony from the jury evidently thinking the same to be res gestae of the

transaction, but he did give to the jury a special charge reading as follows: "Gentlemen of the Jury: Certain evidence was permitted to go to you concerning the father taking his shot gun and finding his daughter on the night of the alleged offense. I charge you as a matter of law that you cannot convict the defendant upon this evidence alone, neither can you convict the defendant alone upon the evidence that the father of the prosecutrix shot the defendant later." We think the testimony admissible as res gestae, it being shown that the father came up while the struggle between appellant and prosecutrix was actually in progress, and that appellant was shot while fleeing from the actual scene.

Bill of exceptions No. 5 is overruled. It is concerned with the court's failure to give a certain instruction relative to the mental condition of prosecutrix caused by her claimed intoxication at the time of the alleged assault. We do find that the careful trial court did give a charge containing practically the same things requested by appellant in this charge.

Bill of exceptions No. 6 is made up of the appellant's objections and exceptions to the court's charge. We have gone over the same in conjunction with the court's charge, and find that the court's charge, together with the special charges given, admirably and correctly present the law as applied to the facts in this case.

Bills of exceptions Nos. 7 and 8 are also overruled for the same reason as is herein given for overruling bill No. 2.

Bill of exceptions No. 9 complains because of the asking of the question to one of appellant's character witnesses as to whether the witness had heard of the appellant having been charged with drunkenness. It seemed that after the witness had answered that he had not heard of such charge, the witness was also asked whether he had heard of appellant living in adultery with a certain woman on a certain street, to which such witness answered that he had not heard such. We note that appellant applied for a suspended sentence in the event of a conviction, and also put his character in issue as a peaceable, law-abiding citizen. It is also observed that these same questions were propounded to the appellant as well as to many others of his character witnesses with no objection being shown thereto, and under these circumstances we think the bill does not reflect reversible error. See 12 Tex. Jur., p. 766.

Bill of exceptions No. 12 complains of the trial court's failure to peremptorily instruct the jury to return a verdict of not guilty. This charge should not have been given.

Bill of exceptions No. 13 complains of the prosecutrix

being allowed to testify as to what her father did at the scene of the alleged struggle, when he procured his gun. We have already heretofore held that such was res gestae, and admissible as part of the transaction.

Bill of exceptions No. 14 complains because the father Mr. Welborn was allowed to testify that when he started after his daughter on the night in question, that as he "started out the front door, and the gun was sitting by the side of the door, and I picked it up and took it with me." That Mr. Welborn had the gun was testified to by appellant himself, and we can see no probable reason how appellant could have possibly been injured by allowing testimony to a fact that was so patently present at the scene of the alleged offense.

We see no error reflected in this record, and the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In our disposition of bill of exception No. 9 we had no intention of holding that the State should not be permitted in cross-examining appellant's character witnesses to ask them whether they had heard of rumors or of particular and specific charges or acts of the appellant inconsistent with the character the witnesses were called to prove. It is well settled that a witness to the good character of the accused may be asked upon cross-examination whether he had heard of rumors, or of particular and specific charges or acts of the accused inconsistent with the character he was called to prove, not to establish the truth of such charges, but to test the credibility of the witness and enable the jury to weigh his evidence. Garza v. State, 88 S. W. (2d) 113.

After carefully re-examining the record in the light of appellant's motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.